IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA, )
)
Appellee, )
)
v. )
)
ALVARO FELIX, )
)
Appellant. )
)

2 CA-CR 2005-0131
DEPARTMENT B

**O P I N I O N**

APPEAL FROM THE SUPERIOR COURT OF PINAL COUNTY

Cause No. CR200300852

Honorable Boyd T. Johnson, Judge

REVERSED AND REMANDED

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Alan L. Amann
Tucson
Attorneys for Appellee

Harriette P. Levitt
Tucson
Attorney for Appellant

E C K E R S T R O M, Presiding Judge.

**¶1** A jury found Alvaro Felix guilty of second-degree murder. After the jury also found the existence of three aggravating circumstances, the trial court sentenced him to the maximum, aggravated term of twenty-two years of imprisonment. Felix appealed his conviction and sentence on the ground the trial court had violated his double jeopardy rights by rejecting his guilty plea after accepting it in a previous proceeding. In a memorandum decision filed November 15, 2006, we reversed Felix's conviction, vacated the order rejecting the guilty plea, and remanded the case for further proceedings consistent with our decision. *State v. Felix*, No. 2 CA-CR 2005-0131 (memorandum decision filed Nov. 15, 2006). Felix then filed a motion to have us designate the memorandum decision as an opinion. Receiving no objection from the state, we grant the motion in part. Because our resolution of the question whether Felix was required to seek relief on his double jeopardy claim exclusively by way of special action merits publication, *see* Rule 31.26, Ariz. R. Crim. P., 17 A.R.S., we publish that portion of the decision.

**¶2** A Pinal County grand jury charged Felix with a single count of second-degree murder. He entered into an agreement with the state to plead guilty to the offense of dangerous manslaughter with a prison sentence of not less than sixteen nor more than twenty-one years. During the change-of-plea hearing, the trial court explained to Felix that the minimum sentence required by the agreement was an aggravated sentence. Felix told the court he had no questions about the agreement. No discussion about potential aggravating circumstances, or how they would be found, occurred during the change-of-plea hearing.

¶3         The judge accepted the guilty plea on March 31, 2004, stating, "[I]t is . . . my practice at the time of the change of plea to accept the plea agreement, enter it of record so that neither side can back out, leaving only the Court's discretion, of course, to reject the sentencing provisions." After the court accepted Felix's guilty plea but before the sentencing hearing, the United States Supreme Court decided *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004).

¶4         In response to *Blakely*, Felix moved to vacate the sentencing hearing and set a hearing to evaluate the status of his guilty plea, arguing that, absent a jury trial to determine aggravating circumstances, the court could not sentence him to more than the presumptive term of 10.5 years. Felix asked that the "Court use every means to avoid vacating []his plea" and suggested that the court conduct a jury trial on aggravating and mitigating circumstances. Throughout the proceedings, Felix maintained that the state had no right to withdraw from the plea agreement because jeopardy had attached when the court accepted his guilty plea. During the hearing held on the issue, Felix also argued that double jeopardy prohibited the court from rejecting the guilty plea.

¶5         On August 16, 2004, the trial court stated it could not sentence Felix under the terms of the plea agreement because the minimum stipulated sentence required a *Blakely*-compliant finding of aggravating circumstances and Felix had not admitted any. The court then rejected the guilty plea and set the case for trial. Felix was convicted.

¶6         On appeal, Felix argues, *inter alia*, that the trial court violated his double jeopardy rights by rejecting his guilty plea after previously accepting it. As a remedy for that

error, Felix contends he was entitled to reversal of his conviction and reinstatement of his guilty plea. For reasons we have articulated in our memorandum decision, we agree.

**¶7** Citing *State v. Moody*, 208 Ariz. 424, 94 P.3d 1119 (2004), the state maintains Felix waived his double jeopardy claim because he did not seek special action relief after the trial court rejected his guilty plea. In *Moody*, the supreme court rejected the defendant's double jeopardy claim, which was based on alleged prosecutorial misconduct, because (1) the defendant had neither moved for a mistrial when the alleged misconduct occurred nor sought special action relief because of it, and (2) the defendant had not demonstrated that a mistrial would have been justified by the alleged misconduct even had he requested it. *Id.* ¶¶ 21-23. Here, by contrast, Felix has not alleged any trial error that could have been remedied by a motion for a mistrial. Instead, he vigorously asserted his claim in the trial court at the only appropriate time—before trial commenced.

**¶8** Nonetheless, the state maintains that all interlocutory double jeopardy claims must be raised by special action and that Felix waived his claim by failing to file a special action in this court before his trial commenced. Although Arizona courts have stated that "'a petition for special action is the appropriate vehicle for a defendant to obtain judicial appellate review of an interlocutory double jeopardy claim,'" *id.* ¶ 22, *quoting Nalbandian v. Superior Court*, 163 Ariz. 126, 130, 786 P.2d 977, 981 (App. 1989), no case has ever held that a special action petition is the exclusive vehicle for raising such a claim. In fact, Arizona courts have addressed double jeopardy claims on appeal and have rejected or disfavored technical arguments that would have precluded appellate review of those claims

on their merits. *See, e.g., State v. Wilson*, 207 Ariz. 12, ¶¶ 4, 6-7, 82 P.3d 797, 799 (App. 2004) (treating appeal raising double jeopardy claim as special action in response to state's assertion that we lacked jurisdiction to review denial of defendant's motion to dismiss charges on appeal); *State v. Millanes*, 180 Ariz. 418, 421, 885 P.2d 106, 109 (App. 1994) ("[T]he purpose for the general rule of waiver arising from the failure to raise the issue in the trial court has no application to a claim of double jeopardy.").

¶9        The state maintains that our supreme court in *Moody* held that interlocutory claims of double jeopardy must be raised by special action. There, the court observed it had "never reviewed a double jeopardy claim based on prosecutorial misconduct if the defendant had not previously moved for mistrial *or* sought relief by special action from the trial court's denial of his motion to dismiss on those grounds." 208 Ariz. 424, ¶ 23, 94 P.3d at 1133 (emphasis added). But the court thereby offered two separate avenues by which the defendant could have preserved a trial error purportedly amounting to a double jeopardy violation—one of them by a motion for mistrial made at the appropriate time. By raising and arguing his double jeopardy claim in the trial court at the appropriate time, Felix likewise gave the trial court ample opportunity to correct the error—the procedural equivalent of seeking a mistrial on a trial claim of prosecutorial misconduct.

¶10        Not only have our courts not expressly required that double jeopardy claims be raised by special action, we find little logic in imposing such a rule. The exercise of our jurisdiction to address an issue raised by special action is discretionary—we may decline jurisdiction and thereby render no decision on the merits at all. *See Jackson v. Schneider*,

207 Ariz. 325, ¶ 4, 86 P.3d 381, 382 (App. 2004) ("This Court retains the broad discretion to decline jurisdiction."); *Blake v. Schwartz*, 202 Ariz. 120, ¶ 7, 42 P.3d 6, 8 (App. 2002) (acceptance of special action jurisdiction is "highly discretionary"). By contrast, once our jurisdiction has been properly triggered by a criminal appeal, we must address that appeal. *See* Ariz. Const. art. II, § 24 ("In criminal prosecutions, the accused shall have . . . the right to appeal in all cases . . . ."); *Wilson v. Ellis*, 176 Ariz. 121, 123, 859 P.2d 744, 746 (1993) ("Clearly, art. 2, § 24 guarantees some form of appellate relief."); *see also* A.R.S. § 12-120.21(A) (court of appeals has jurisdiction in specified criminal actions appealed from superior court except death penalty cases). Were we to adopt the state's suggested rule and examine interlocutory double jeopardy claims only by special action, we would require an accused to vindicate those claims by a procedural avenue that provides a less robust guarantee that the claims would be considered on their merits. And it would make little sense to impose such a procedural limitation on those seeking to assert their fundamental constitutional protection against double jeopardy when the law imposes no similar limitation on appellate review of most other claims of pretrial error. *See Benton v. Maryland*, 395 U.S. 784, 796, 89 S. Ct. 2056, 2063 (1969) (protection against double jeopardy is "'fundamental to the American scheme of justice'"), *quoting Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S. Ct. 1444, 1447 (1968).

¶11 Moreover, our jurisprudence has characterized a special action as an appropriate vehicle for raising double jeopardy claims only because we have recognized the inadequacy of post-trial appeals in remedying some of the harms of a double jeopardy

6

violation—forcing a defendant to endure the strain, embarrassment, and expense of an unlawful trial. *See Moody*, 208 Ariz. 424, ¶ 22, 94 P.3d at 1133. Thus, the option exists for an accused to seek interlocutory relief from all the potential harms of a double jeopardy violation. But, because a defendant may also suffer harm from the post-trial consequences of a conviction arising from a double jeopardy violation, a defendant may have substantial cause to raise a double jeopardy claim on appeal. We can see no reason to deprive an accused of the right to seek relief from such consequences on appeal merely because our law also provides the option of raising that claim at an earlier stage in the proceedings.

¶12 The state suggests that, if we entertain Felix's claim on appeal, we will permit him the strategic advantage of having taken "his chances on an acquittal at trial." But, because a successful claim for an interlocutory violation of the Double Jeopardy Clause would have barred the trial altogether, we cannot fathom what advantage Felix, or any similarly situated defendant, would gain from such a strategy. *See Millanes*, 180 Ariz. at 421, 885 P.2d at 109 (because successful double jeopardy claim prohibits further proceedings, "the purpose of the general rule of waiver arising from the failure to raise the issue in the trial court has no application to a claim of double jeopardy").

¶13 Finally, although our case law counsels us to preserve incentives for litigants to raise all issues before the trial court and afford it the earliest opportunity to remedy any error, no similar logic suggests that interlocutory claims must be raised in an appellate court at the first conceivable opportunity in order to avoid waiver. To the contrary, we generally disfavor interlocutory appeals in criminal cases because they have great potential to delay

7

and disrupt an orderly trial process—and are therefore """"especially inimical to the effective and fair administration of the criminal law."""" *Nalbandian*, 163 Ariz. at 128, 786 P.2d at 979, *quoting Abrey v. United States*, 431 U.S. 651, 657, 97 S. Ct. 2034, 2039 (1977), *quoting DiBella v. United States*, 369 U.S. 121, 126, 82 S. Ct. 654, 658 (1962). And, we would risk undermining the authority and stature of the trial bench were we to permit litigants to generally conclude that they must immediately challenge pretrial rulings in criminal cases by special action on penalty of their waiver. For those reasons, the pursuit of interlocutory appellate relief by way of special action must remain an exceptional, rather than a presumptive, avenue for challenging pretrial error in criminal cases. We are therefore reluctant to add to the very short list of criminal claims arising in superior court that must be raised by special action.

¶14 For the foregoing reasons, we reject the state's contention that Felix waived any appellate remedy when he failed to raise his double jeopardy claim in a special action.

_____
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Judge


_____
PHILIP G. ESPINOSA, Judge