927 P.2d 822

MARICOPA COUNTY PUBLIC DEFENDER'S OFFICE, Attorneys Christopher Johns and Diane Enos, Maricopa County Public Defenders, Petitioners,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, The Honorable Alfred J. Rogers, a judge thereof, Respondent Judge,

Clarence Charles Nelson and former client, Shawna Debus, Real Parties in Interest.

MARICOPA COUNTY PUBLIC DEFENDER'S OFFICE; Attorney Chelli Wallace, Maricopa County Public Defender, Petitioners,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, The Honorable John H. Seidel, a judge thereof, Respondent Judge,

Frank Rangel, and former client, Juan Salas, Real Parties in Interest.

Nos. 1 CA–SA 96–0102, 1 CA–SA 96–0118.

Court of Appeals of Arizona, Division 1, Department B.

July 11, 1996.

As Corrected July 15, 1996.

Review Denied Nov. 19, 1996.

Dean W. Trebesch, Maricopa County Public Defender by Christopher Johns, Diane Enos and Chelli Wallace, Deputy Public Defenders, Phoenix, for Petitioners.

Grant Woods, Arizona Attorney General by Paul J. McMurdie, Chief Counsel—Criminal Appeals Section, Diane M. Ramsey, Assistant Attorney General, Phoenix, for Respondent Judge.

## OPINION

NOYES, Judge.

These special actions arise from two unrelated cases in which the Maricopa County Public Defender's Office ("the public defender") moved to withdraw on grounds that an ethical conflict existed between its duty to zealously represent a current client (the defendant) and its duty of loyalty to a former client (an adverse witness). In each case, the trial court denied the motion because counsel failed to disclose confidential information about the former client. The public defender

then filed petitions for special action, arguing that the trial court abused its discretion and that we should accept jurisdiction and remand with directions to grant the motion to withdraw. We consolidated the actions, accepted jurisdiction, and granted the requested relief.

## I

■ An order denying counsel's motion to withdraw is the proper subject of a petition for special action. *Okeani v. Superior Court*, 178 Ariz. 180, 181, 871 P.2d 727, 728 (App.1993). The issue presented in these special actions may be unique to Maricopa County, but because it appears to be a recurring problem there, we accepted jurisdiction to address it. *See State ex rel. Romley v. Superior Court*, 184 Ariz. 223, 225, 908 P.2d 37, 39 (App.1995).

## II

On November 27, 1995, the superior court appointed the public defender to represent Clarence Charles Nelson on a burglary charge. The case was assigned to Deputy Public Defender Diane Enos, who soon interviewed Shawna Debus, who had been arrested with Nelson, and determined that she was a potential unindicted coconspirator and had given the police inculpatory statements about Nelson.

On December 7, Enos learned from her conflicts check that the public defender represented Debus on charges "similar" to Nelson's, and that Debus was to be sentenced on December 15. Enos filed a "Motion to Determine Counsel" and requested a hearing. At the ex parte hearing, Deputy Public Defender Christopher Johns appeared with Enos and, after stating the facts, avowed that an ethical conflict existed requiring withdrawal as Nelson's counsel because the public defender's file on Debus contained confidential information that should be used to impeach her.

Judge Rogers advised that avowals were not sufficient; that counsel needed to show "something that another—that an attorney wouldn't come across, or to put it another way, that you learned because of looking through the client's file.... [Y]ou're going to have to give me what I'll call some meat rather than just talking in these broad generalities as to why I should allow you to withdraw." The court advised that it would seal any confidential information counsel disclosed and would recuse itself if the information affected its impartiality. Counsel declined to disclose any confidential information and the court denied the motion to withdraw.

Also on November 27, 1995, the public defender was appointed to represent Frank Rangel on a burglary charge. The case was assigned to Deputy Public Defender Chelli Wallace, who conducted a conflicts check and learned that two people with Rangel at relevant times were former clients of the public defender. Wallace reviewed the office files and discovered confidential information to impeach Juan Salas, whom the public defender had represented in various juvenile court proceedings, one of which was a burglary charge.

Rangel's defense was that he was sitting in the car, unaware that Salas was committing a burglary. Salas did not support this defense, but the victim arguably did: the victim identified Salas as the one who came out of the backyard and shot him, and he identified Rangel as the one sitting in the car. Salas, however, had told police that he, Salas, was not in the backyard, and he did not shoot the victim; he was sitting in the back seat of the car when the victim was shot. Salas also stated to police that he had told Rangel not to do a burglary because he, Salas, did not want to get in trouble. (The other former client told police that he, himself, was sitting in the car and knew nothing about a burglary, but he did honk the horn to alert Rangel, who was in the backyard.)

Wallace filed a motion to withdraw, supported by a confidential memorandum containing the above-related facts. Judge Seidel denied the motion, explaining in a minute entry that:

> [T]here is nothing in the confidential memorandum which sets forth or describes what, if any, confidential information was obtained from either witness in the course of the prior representation which could be used in this case if the person was called

as a witness and if counsel had to cross-examine the person. This Court is therefore unable to find a conflict, and accordingly, the motion to withdraw is denied.

After Wallace received a telephonic, informal ethics opinion from the State Bar advising that continued representation of Rangel would be an ethical violation, she moved for reconsideration of the motion to withdraw. At the ensuing open-court hearing, the court said it assumed that the public defender's file on Salas contained information that would benefit Rangel, but "my understanding is that you [Wallace] have to make a showing that you have got some kind of information that you can use to cross-examine [Salas] ... that nobody else can get at, such as an attorney/client conversation." The court stated its presumption that what Wallace knew about Salas was available in the juvenile court file, and that new counsel could access that file with a court order. Wallace did not disclose any confidential information to overcome the court's presumption, and the court denied the motion for reconsideration.

### III

The guarantees of the Sixth Amendment include the right to an attorney with undivided loyalty. *See Holloway v. Arkansas,* 435 U.S. 475, 481–82, 98 S.Ct. 1173, 1177–78, 55 L.Ed.2d 426 (1978); *State v. Davis,* 110 Ariz. 29, 31, 514 P.2d 1025, 1027 (1973). Counsel must be free to zealously defend the accused in a conflict-free environment. *See Johnson v. Hopper,* 639 F.2d 236, 238 (5th Cir.), *cert. denied,* 454 U.S. 1010, 102 S.Ct. 548, 70 L.Ed.2d 412 (1981).

Attorney conflicts of interest are addressed in the Ethical Rules incorporated into Rule 42 of the Arizona Rules of the Supreme Court. We have appended to this opinion the text of the rules most relevant to these actions: Ethical Rules ("ER") 1.6, 1.7, 1.9, and 1.10.

The Maricopa County Public Defender's Office has adopted "Conflict of Interest Guidelines" which we will refer to as its "conflicts policy." The current version of this policy became effective on January 4, 1994, and was followed by the deputy public

defenders assigned to represent Nelson and Rangel. The public defender's conflicts policy provides, in part, as follows:

### IV. *FORMER CLIENTS AS WITNESSES*

Former representation of a potential witness against a present client is not, in itself, grounds for disqualification. If representation of the former client has resulted in information that is 1) substantially related to the present case, 2) materially adverse to the interests of the former client, and 3) not contained in easily accessible public records, the office should move to withdraw.

. . . .

### VI. *PROCEDURES FOR DETERMINING CONFLICT*

As soon as possible after assignment, the attorney should review all charging documents, police reports, and other available records for potential conflicts of interest....

If a former client is identified [by an office records check], the attorney should examine the case file to determine whether confidential information exists.... If the attorney who previously represented the former client is still with the office, the attorney should be contacted to determine whether the attorney is aware of confidential information.

### VII. *SUPERIOR COURT CONFLICTS OF INTEREST*

When an attorney identifies a conflict of interest in superior court, the attorney must complete the potential conflict of interest portion of the Conflict Check and Supervisor Review Form and submit it to the attorney's supervisor for approval before moving to withdraw. If the supervisor does not approve the request, the attorney may request a review by the Chief Trial Deputy or Juvenile Division Supervisor.

If the request is approved, the attorney should immediately move to withdraw. The motion to withdraw must thoroughly state the reasons for withdrawal while protecting confidential client information.

■ Some may question why the public defender's conflicts policy requires defendant's counsel to talk with the former client's counsel and review the former client's file rather than to "screen" herself from both, but we find this action a prudent exercise of professional responsibility. It is certain that a percentage of cases assigned to the public defender will involve conflicts of interest. Those conflicts should be discovered immediately, for they will come out inevitably. The earlier a conflict of interest is discovered and dealt with, the less damage it can do.

Some law firms have the structure and resources to screen attorneys from conflicts of interest, *see, e.g., Romley v. Superior Court,* 184 Ariz. at 228, 908 P.2d at 42, but the record contains no suggestion that the public defender can do so. In any event, public defender screening of conflicts might cost the criminal justice system more than it would save. The actions and inactions of deputy public defenders are occasionally questioned by clients, and screening of public defender conflicts would be a source of pretrial and post-trial litigation, with all its attendant costs.

■ The State advises that "the gist of this action is whether defense counsel or the trial court is going to decide if there is a conflict of interest necessitating disqualification of counsel," but we disagree with this "either-or" proposition. Defense counsel and the trial court each decide something here: counsel decides whether to file a motion to withdraw, and the court decides whether to grant it. As we see it, the issue has to do with disclosure: the question is whether the trial court should require defense counsel to disclose confidential information when counsel avows that counsel has an ethical conflict requiring withdrawal. We conclude that ordinarily the trial court should not do that.

In the interest of clarity and brevity, we focus on just two leading cases, *Holloway* and *Davis,* and we refer those interested in a broader discussion to Gary T. Lowenthal, *Successive Representation by Criminal Lawyers,* 93 Yale L.J. 1 (1983), and Bruce A. Green, *"Through a Glass, Darkly": How the Court Sees Motions to Disqualify Criminal Defense Lawyers,* 89 Colum. L.Rev. 1201 (1989). *Holloway* and *Davis* involved counsel who represented codefendants, but we find them instructive here as well. We apply the following principles from *Davis* to motions to withdraw based on conflicts between the interests of current and former clients:

An attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial. He has an obligation to bring the fact of this conflict to the attention of the court at the earliest possible time after the conflict is discovered. *The trial court should give great weight to a representation by counsel that there is a conflict, particularly in the case where the counsel has been appointed by the court rather than retained by the defendants.*

110 Ariz. at 31, 514 P.2d at 1027 (emphasis added).

*Holloway* expanded upon *Davis* and explained why counsel's avowal of an ethical conflict requiring withdrawal is entitled to great weight despite the concern that some might abuse this trust:

[A]ttorneys are officers of the court, and "'when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath.'"

. . .

. . . In the State's view, the ultimate decision on those [withdrawal] matters must remain with the trial judge; otherwise unscrupulous defense attorneys might abuse their "authority," presumably for purposes of delay or obstruction of the orderly conduct of the trial.

The State has an obvious interest in avoiding such abuses. But our holding does not undermine that interest. When an untimely motion for separate counsel is made for dilatory purposes, our holding does not impair the trial court's ability to deal with counsel who resort to such tactics. *Nor does our holding preclude a trial court from exploring the adequacy of the basis of defense counsel's representations regarding a conflict of interests with-*

*out improperly requiring disclosure of the confidential communications of the client.*

435 U.S at 486–87, 98 S.Ct. at 1179–80 (emphasis added) (citations omitted) (footnotes omitted).

We also note the Comment to ER 1.16, which concerns motions to withdraw based on client demands that counsel engage in unprofessional conduct: "The court may wish an explanation for the withdrawal, while the lawyer may be bound to keep confidential the facts that would constitute such an explanation. The lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient."

Conflicts involving representation of codefendants, or of a defendant who demands unprofessional conduct from counsel, are more readily perceived as requiring withdrawal than conflicts between a defendant and an adverse witness. In the defendant-witness situation, the trial court might be expected to require adequate support for the avowal that counsel has an ethical conflict requiring withdrawal. Counsel's burden of persuasion might be expected to rise as the case approaches trial. But ordinarily the court should not condition the grant or denial of a motion to withdraw on counsel's willingness to violate ER 1.6.

## IV

In each of these special actions, we conclude that the trial court abused its discretion in denying the motion to withdraw, given what defense counsel had timely shown: facts establishing an apparent conflict of interest, compliance with the public defender's conflicts policy, an understanding of the applicable rules and cases, an avowal that counsel had an ethical conflict requiring withdrawal, and no reason to reject that avowal.

Relief has already been granted by separate orders directing the trial court to grant the public defender's motions to withdraw.

GRANT, P.J., and EHRLICH, J., concur.

## APPENDIX

### ER 1.6 CONFIDENTIALITY OF INFORMATION

(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (b), (c) and (d) or ER 3.3(a)(2) [none of which apply here].

### ER 1.7 CONFLICT OF INTEREST: GENERAL RULE

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

### ER 1.9 CONFLICT OF INTEREST: FORMER CLIENT

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as ER 1.6 would permit with

respect to a client or when the information has become generally known.

would be prohibited from doing so by ER 1.7, 1.8(c), 1.9 or 2.2.

### ER 1.10 IMPUTED DISQUALIFI-CATION: GENERAL RULE

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone