IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2006-0015 |
| Appellee, | ) | DEPARTMENT B |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| JILL IRENE PARIS-SHELDON, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20041301

Honorable Howard Hantman, Judge
Honorable Howard Fell, Judge Pro Tempore

AFFIRMED

_____

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Kathryn A. Damstra                   Tucson
Attorneys for Appellee

Robert J. Hooker, Pima County Public Defender
  By Nancy F. Jones                                    Tucson
Attorneys for Appellant

_____

B R A M M E R, Judge.

**¶1** A jury found appellant Jill Irene Paris-Sheldon guilty of two counts of disorderly conduct. Paris-Sheldon argues on appeal the trial court erroneously denied her motion for substitute counsel and motion to dismiss. She also asserts the jury selection procedure was improper and the court erred when it denied her motion for a judgment of acquittal made pursuant to Rule 20, Ariz. R. Crim. P., 17 A.R.S. Finding no error, we affirm.

**Factual and Procedural Background**

**¶2** On appeal, "[w]e view the facts in the light most favorable to sustaining the verdict[s]." *State v. Cropper*, 205 Ariz. 181, ¶ 2, 68 P.3d 407, 408 (2003). On September 8, 2003, Pima County Sheriff's deputies responded to a report of a "possible suicide threat" at a trailer belonging to Bud Love. Paris-Sheldon had been living in the trailer with Love and was present when the deputies arrived. She initially denied any firearms were in the trailer but admitted a revolver found on top of the television set belonged to her. The deputies unloaded the revolver, placed the ammunition in the freezer, without telling Paris-Sheldon where they had put the ammunition, and left the premises.

**¶3** That same day, Frank Palmer had been visiting his friend, Gary Hyatt, Love's neighbor. Palmer had been friends with Paris-Sheldon for about four years, and the two of them had worked together. Palmer went to Love's trailer to find out what had happened, and he and Paris-Sheldon began talking and drinking. Paris-Sheldon was packing items from the trailer and moving them to her truck while he sat at the kitchen table. Palmer testified there was a revolver and a box of ammunition on the kitchen table and Paris-Sheldon had told him

she "had worked on the gun and made it so it had a hair-trigger on it." He stated he had had "three or four shots of whiskey and probably about four or five beers" when he "saw [Paris-Sheldon] leave the trailer at one point and then come back in and, bam, [he] got shot in the face." When she came into the trailer, he could "see that she was holding something in front of her, . . . but it was . . . so quick. . . . [A]s soon as she stepped in the door it was like instantaneous, the gun went o[ff]."

¶4        Gary Hyatt testified he had heard a loud pop, "like someone had slammed the trailer door," before "[Paris-Sheldon] came over and told [him] that [s]he had shot [Palmer] and for [him] to call 911." While Hyatt was on the telephone with the 911 operator, he heard what he believed to be a gunshot, and then "lock[ed] [his] doors and turned out [his] lights and went and got [his] pistol." The same deputies who had come earlier in the day responded to Hyatt's 911 call and saw Paris-Sheldon exiting Love's trailer as they arrived. She initially told the deputies "that nobody had been shot," but when asked where the revolver was, she stated she had shot Palmer and "thrown [the gun] near a truck." The deputies then took Paris-Sheldon into custody.

¶5        A grand jury indicted Paris-Sheldon on charges of disorderly conduct and attempted first-degree murder in CR-20033007. On the first day of trial, following Paris-Sheldon's rejection of the state's plea offer, the court granted the state's motion to dismiss all charges without prejudice, but denied Paris-Sheldon's motion to dismiss them with prejudice. Approximately one month later, in April 2004, a second grand jury charged Paris-

3

Sheldon with aggravated assault with a deadly weapon or dangerous instrument, aggravated assault causing serious physical injury, disorderly conduct, and attempted second-degree murder in this case, CR-20041301.

¶6        Approximately eight months later, Paris-Sheldon moved to dismiss the disorderly conduct and attempted murder charges in this case, arguing, pursuant to Rule 16.6(a), Ariz. R. Crim. P., 16A A.R.S., that the state had sought to dismiss the charges in CR-20033007 to avoid the speedy trial requirements of Rule 8, Ariz. R. Crim. P., 16A A.R.S. Although argument on the motion was scheduled, it apparently was never held, and the trial court did not rule on the motion before trial. On the first day of trial, before a different judge, Paris-Sheldon brought the motion to the court's attention. The court stated it was "not prepared to rule on the motion," but noted, "we'll have an appellate record," and permitted the trial to proceed. The court granted the state's motion to dismiss the attempted second-degree murder charge with prejudice on the third day of trial.

¶7        The jury did not reach a verdict on the aggravated assault charges but found Paris-Sheldon guilty of the lesser-included offense of disorderly conduct as to Palmer and of disorderly conduct as to Hyatt. The jury found both offenses to be of a dangerous nature. The trial court sentenced Paris-Sheldon to concurrent, presumptive prison terms of 2.25 years for each count. This appeal followed.

4

**Discussion**

Motion for Substitute Counsel

**¶8** Paris-Sheldon first contends the trial court erroneously denied her motion requesting substitute counsel. We review a trial court's denial of a defendant's request for substitute counsel for a clear abuse of discretion. *See State v. Moody*, 192 Ariz. 505, ¶ 11, 968 P.2d 578, 580 (1998). A trial court abuses its discretion if it fails to inquire into the basis for the defendant's dissatisfaction with counsel or fails to conduct a hearing on the defendant's complaint after being presented with specific factual allegations in support of the request for new counsel. *See State v. Torres*, 208 Ariz. 340, ¶¶ 7-8, 93 P.3d 1056, 1059 (2004).

**¶9** The Sixth Amendment to the United States Constitution entitles a criminal defendant to competent representation but does not guarantee a defendant "counsel of choice," or "a meaningful relationship with his or her attorney." *Moody*, 192 Ariz. 505, ¶ 11, 968 P.2d at 580. In deciding whether to grant a request for substitute counsel, a trial court must therefore consider several factors, including

> whether an irreconcilable conflict exists between counsel and the accused, and whether new counsel would be confronted with the same conflict; the timing of the motion; inconvenience to witnesses; the time period already elapsed between the alleged offense and trial; the proclivity of the defendant to change counsel; and quality of counsel.

*Id.*, *quoting State v. LaGrand*, 152 Ariz. 483, 486-87, 733 P.2d 1066, 1069-70 (1987).

¶10 On the morning of the first day of trial, November 1, 2005, Paris-Sheldon called the trial court's office concerning her appointed attorney. When the court later questioned her about the telephone call in open court, she stated she wanted to "fire" her attorney "and have a change of counsel." The court further questioned her concerning the basis for her request, and she stated her attorney had lied to her and "failed to investigate the case." She asserted her attorney had maintained she "had a good defense" until a recent meeting when he told her she "had no defense, and he had done nothing." She was initially unable to recall when that meeting had occurred but later stated she "believ[ed] it was the 19th [of October]." She also stated she had, at that time, asked her attorney to withdraw from the case, although her attorney asserted she did not ask him to do so until the Friday before trial. When queried by the court, Paris-Sheldon's attorney stated he was prepared for trial and denied having told her she "had a good defense." The court denied Paris-Sheldon's motion, stating her request was not timely and "[her attorney was] prepared to go to trial."

¶11 Paris-Sheldon asserts the trial court's inquiry into the basis for her request for new counsel was improper because it was "limited" and "based solely on its being untimely . . . , because timing is only one of several relevant factors the court is to consider." Paris-Sheldon cites no authority, however, and we find none, requiring a trial court to make explicit findings in support of its decision to deny a motion for substitute counsel. All *Torres* requires is for the court to "inquire [on the record] as to the basis of a defendant's request," and, if necessary, conduct a hearing to determine whether substitution is proper. *Torres*, 208

6

Ariz. 340, ¶ 7-8, 93 P.3d at 1059. We find nothing improper in the procedure the court followed here; it explored the basis of Paris-Sheldon's reasons supporting her motion for new counsel and, albeit informally, conducted a hearing to evaluate those reasons by questioning both her and her attorney. Paris-Sheldon does not explain what other pertinent evidence or information would have come to light had the court conducted a more formal or extensive hearing.

¶12 Paris-Sheldon also contends the trial court's inquiry revealed evidence demonstrating "a breakdown of communication and an irreconcilable conflict . . . between [Paris-Sheldon] and her appointed counsel." "[W]hen there is a complete breakdown in communication or an irreconcilable conflict between a defendant and his appointed counsel, that defendant's Sixth Amendment right to counsel has been violated." *Id*. ¶ 6. "The types of communication breakdowns that constitute 'total breakdowns' defy easy definition." *United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002). "As a general matter, however, we believe that to prove a total breakdown in communication, a defendant must put forth evidence of a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible." *Id.*

¶13 When a trial court encounters a factual dispute in conducting the *Torres* inquiry, as the court did here, the court must resolve it. And we must defer to that resolution so long as the record supports it. *Cf. State v. Rosengren*, 199 Ariz. 112, ¶ 9, 14 P.3d 303, 307 (App. 2000) (when reviewing motion to suppress evidence, "[w]e defer to the trial court's

7

factual findings that are supported by the record and not clearly erroneous"). As we noted, Paris-Sheldon's attorney denied he had misled her about the strength of her defense and stated he was adequately prepared for trial. These avowals support the trial court's apparent determination that Paris-Sheldon's attorney had not misled her or failed to investigate the case and prepare for trial.

¶14 Paris-Sheldon also apparently asserts she was entitled to a new attorney because she had lost trust in her appointed counsel. We, however, do not agree a loss of trust, without more, requires a trial court to appoint new counsel. *See Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir. 1985) ("A defendant's general loss of confidence or trust in his counsel, standing alone, is not sufficient [to require the appointment of new counsel]."). No doubt many criminal defendants mistrust their attorneys. And, even if Paris-Sheldon and her attorney had miscommunicated about the strength of her defense, that is not a complete breakdown in communication sufficient to deprive her of her right to counsel.[1] *See Lott*, 310 F.3d at 1249. Accordingly, the trial court did not abuse its discretion in resolving the factual dispute between Paris-Sheldon and her attorney and determining she had failed to show an irreconcilable conflict or complete breakdown in communication between her and defense counsel. *See Moody*, 192 Ariz. 505, ¶ 11, 968 P.2d at 580.

---

[1]We do not address what effect, if any, that asserted miscommunication may have on any future ineffective assistance of counsel claim Paris-Sheldon may assert. As Paris-Sheldon correctly notes, such claims cannot be raised on direct appeal. *State v. Spreitz*, 202 Ariz. 1, ¶ 9, 39 P.3d 525, 527 (2002).

¶15 Paris-Sheldon next argues the trial court's ruling was improper because it "questioned defense counsel as to the veracity of [Paris-Sheldon's] statements, thus violating the attorney-client privilege." We fail to see how a trial court can comply with our supreme court's instructions in *Torres*, particularly where a defendant asserts his or her attorney has been dishonest, without some inquiry into confidential matters.[2] Paris-Sheldon's assertion her attorney had lied to her and failed to properly investigate her case clearly "question[ed] the competency and reputation of the attorney who represented [her]." *State v. Cuffle*, 171 Ariz. 49, 52, 828 P.2d 773, 776 (1992) (finding attorney-client privilege waived where ineffective assistance of counsel claimed). Therefore, we agree with the state that Paris-Sheldon cannot "use the attorney-client privilege as a shield to block inquiry into an issue that she raised." *See Alexander v. Superior Court*, 141 Ariz. 157, 163, 685 P.2d 1309, 1315 (1984) ("If the client himself does not treat the particular communication as privileged, that communication will not be recognized as a confidence.").

¶16 Paris-Sheldon also contends, relying on *Maricopa County Public Defender's Office v. Superior Court*, 187 Ariz. 162, 927 P.2d 822 (App. 1996), that a trial court must determine whether a defendant's motion for substitute counsel is proper without "[i]nquiry into the area of confidential communications." That case, however, addressed an attorney's

---

[2]If the trial court determines it must make a detailed inquiry into confidential communications between a defendant and his or her attorney, it may need to conduct that portion of the hearing when the state is not present. Paris-Sheldon does not argue, however, that the state's presence during the court's inquiry prejudiced her.

motion to withdraw from a case, not a defendant's motion for substitute counsel based, in part, on counsel's asserted representations. *Id.* at 164, 927 P.2d at 824. There, Division One of this court held a trial court must give "great weight" to an attorney's "avowal of an ethical conflict requiring withdrawal" because "'[a]ttorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath.'" *Id.* at 166, 927 P.2d at 826, *quoting Holloway v. Arkansas*, 435 U.S. 475, 486, 98 S. Ct. 1173, 1179 (1978) (internal quotations omitted). Of course, these considerations do not apply to criminal defendants. Moreover, our supreme court did not suggest in *Torres* that a trial court must take a defendant seeking new counsel at his or her word; it instead requires the court to make an inquiry and, if necessary, resolve any factual dispute.

¶17 Additionally, Paris-Sheldon reasons the trial court's inquiry placed her attorney "in a position adverse to [her,]" thereby creating an "irreconcilable conflict" requiring substitution of counsel. She relies on cases from other jurisdictions holding a defendant is entitled to new counsel when his or her attorney takes an adverse position concerning a motion to withdraw a guilty plea, or at sentencing. *See People v. Lawrence*, 812 N.Y.S.2d 199 (N.Y. App. Div. 2006); *Mattia v. State*, 907 So.2d 683 (Fla. Dist. Ct. App. 2005); *Garcia v. State*, 846 So. 2d 660 (Fla. Dist. Ct. App. 2003); *People v. Caccavale*, 760 N.Y.S.2d 210 (N.Y. App. Div. 2003); *Gunn v. State*, 841 So. 2d 629 (Fla. Dist. Ct. App. 2003). These cases, however, only address the effectiveness of counsel at the same proceeding where the

10

defendant and his or her counsel were at odds, not whether such a conflict necessarily renders counsel ineffective in subsequent proceedings. We reject the notion that the factual dispute between Paris-Sheldon and her attorney about her motion for substitute counsel requires that she be granted a new trial; the mere fact that counsel and client disagreed about a single communication does not demonstrate an irreconcilable conflict or lack of communication sufficient to deprive her of her right to counsel. Moreover, by requiring the inquiry the trial court conducted, our supreme court in *Torres* could not have intended for that inquiry to create the need for substitute counsel where it did not previously exist, unless the inquiry itself was particularly acrimonious.

**¶18** In a related argument, Paris-Sheldon asserts the "denial of conflict free counsel at the hearing on [her] motion to substitute counsel requires that the case be remanded for a hearing at which new counsel should be appointed." She relies primarily on *United States v. Wadsworth*, 830 F.2d 1500 (9th Cir. 1987). There, the defendant's attorney admitted he had stopped working on his client's case, was unprepared to proceed, *id*. at 1507-08, and had expressed hostility toward his client, *id*. at 1510. Thus, the Ninth Circuit Court of Appeals concluded the attorney "had taken an adversary and antagonistic position on a matter concerning his client's right to counsel and to prepare for trial," and held "the district court should have suspended the proceedings and appointed an attorney for the defendant at the competency of counsel hearing." *Id*. at 1511.

**¶19**     Although the Ninth Circuit in *Wadsworth* stated, "[t]here can be no question that th[ose] proceedings were critical," *id.* at 1510, it confined its determination to the "unusual circumstances of th[e] case." *Id.* at 1511. In contrast, Paris-Sheldon's attorney avowed he was prepared for trial and expressed no animosity toward his client or unwillingness to proceed as her attorney. Moreover, Paris-Sheldon does not articulate how an appointed attorney could have assisted her at the hearing. Accordingly, we conclude the trial court did not err by failing to appoint Paris-Sheldon new counsel to advise her during the hearing on her motion for substitute counsel.

Dismissal Without Prejudice in CR-20033007

**¶20**     Paris-Sheldon raises in this appeal the propriety of the trial court's grant of the state's motion to dismiss without prejudice the charges in CR-20033007. As the state correctly points out, we lack jurisdiction to address this issue. *See State v. Alvarez*, 210 Ariz. 24, ¶ 23, 107 P.3d 350, 356 (App. 2005), *vacated in part on other grounds by* 213 Ariz. 467, 143 P.3d 668 (App. 2006). "Only the convictions in [CR-20041301] are properly before us." *Id.*

**¶21**     In this case, Paris-Sheldon filed a motion to dismiss, arguing the charges of attempted murder and disturbing the peace should be dismissed with prejudice because the state previously obtained the dismissal in CR-20033007 "solely 'to avoid the provisions of Rule 8, [Ariz. R. Crim. P., 16A A.R.S.]'" in violation of Rule 16.6(a), Ariz. R. Crim. P., 16A A.R.S. On appeal, she argues that, because the dismissal without prejudice in CR-20033007

12

"was based upon legal error . . . the subsequent motion to dismiss the re-filed counts with prejudice should have been granted."

¶22      The state, relying on *State v. Lujan*, 136 Ariz. 326, 666 P.2d 71 (1983), argues Paris-Sheldon has waived this claim because she failed to obtain a ruling from the trial court on her motion to dismiss. As we noted above, the trial court declined to rule on the motion but nevertheless permitted the trial to proceed, thereby implicitly denying the motion. Because Paris-Sheldon made the court aware she had not abandoned her motion to dismiss and requested the court rule on it, she has not waived this issue on appeal. *See id.* at 328, 666 P.2d at 73; *see also State v. Deschamps*, 105 Ariz. 530, 533, 468 P.2d 383, 386 (1970) ("[T]he trial court must be given the opportunity to rule on the issue and correct possible errors . . . before any assignments of error will be considered on appeal."); *State v. West*, 173 Ariz. 602, 611, 845 P.2d 1097, 1106 (App. 1992) (addressing "implicit denial of the state's motion to dismiss").

¶23      Paris-Sheldon waited eight months after the indictment was issued in this case to file her motion to dismiss and provides no explanation for this delay. Moreover, the proper method to raise the issue was through a motion for reconsideration or petition for special action filed in CR-20033007, not by a motion to dismiss filed in a different case.[3] *See, e.g.,* Ariz. R. Crim. P. 16.1(d) ("Except for good cause, or as otherwise provided by

---

[3]Indeed, it could be fairly argued Paris-Sheldon failed to raise this issue before the trial court in CR-20033007. She asserted there only that she had "been in custody for a long time" and there was no reason the state could not go forward with its charges.

these rules, an issue previously determined by the court shall not be reconsidered."); *Alvarez*, 210 Ariz. 24, ¶ 23, 107 P.3d at 356 ("[A]ppropriate avenue of review [of an order of dismissal without prejudice] is a petition for special action."); *see also Duron v. Fleischman*, 156 Ariz. 189, 191, 751 P.2d 39, 41 (App. 1988) ("An order of dismissal without prejudice may not be appealed by a defendant.").[4] Rule 16.6(a) does not require a trial court to dismiss charges with prejudice if it finds the purpose of the state's motion is to avoid the provisions of Rule 8. Indeed, a court may only dismiss with prejudice if "the interests of justice" require it. Ariz. R. Crim. P. 16.6(d). Instead, if the court concludes the state is attempting to avoid Rule 8, the court must deny the motion to dismiss altogether. *See* Ariz. R. Crim. P. 16.6(A) ("The court, on motion of the prosecutor showing good cause therefor, may order that a prosecution be dismissed at any time upon finding that the purpose of the dismissal is not to avoid the provisions of Rule 8.").

¶24　　The situation before us is analogous to those in which courts have applied the invited error doctrine. "The purpose of the doctrine is to prevent a party from 'inject[ing] error in the record and then profit[ing] from it on appeal.'" *State v. Logan*, 200 Ariz. 564, ¶ 11, 30 P.3d 631, 633 (2001), *quoting State v. Tassler*, 159 Ariz. 183, 185, 765 P.2d 1007,

---

[4]Paris-Sheldon reasons *Duron* and *Alvarez* do not control because those cases "did not in any way state that the defendant could not have waited until the charges were refiled and then moved to dismiss them under the new cause number." As we explain, however, that procedure was improper. For the same reason, we do not address Paris-Sheldon's argument that the grant of the state's motion to dismiss is an appealable order in light of this court's decision in *State v. Felix*, 214 Ariz. 110, 149 P.3d 488 (App. 2006) (declining to require interlocutory double jeopardy claim be brought by special action).

1009 (App. 1988). Although Paris-Sheldon did not directly cause the error she now asserts, her failure to seek review or reconsideration until now prevented the matter from being properly addressed. Had Paris-Sheldon filed a timely motion for reconsideration or petition for special action, the reviewing court could have provided her, if appropriate, the relief Rule 16.6(a) contemplates—denial of the state's motion to dismiss. By instead waiting eight months after the second indictment issued to assert the previous dismissal had been erroneous,[5] Paris-Sheldon effectively prevented Rule 16.6(a) from being applied as our supreme court intended.[6] Thus, because Paris-Sheldon's filing a motion to dismiss in the second case was not the correct method by which to challenge the grant of the state's motion to dismiss without prejudice in the first case, the trial court did not err by implicitly denying it.

---

[5]Moreover, "a defendant may waive speedy trial rights by not objecting to the denial of speedy trial in a timely manner." *State v. Spreitz*, 190 Ariz. 129, 138, 945 P.2d 1260, 1269 (1997); *cf. State v. Vasko*, 193 Ariz. 142, ¶ 30, 971 P.2d 189, 195-96 (App. 1998) (defendant not entitled to dismissal for Rule 8 violation absent showing of prejudice). It follows that a defendant may waive any argument Rule 16.6(a) was not properly complied with by failing to promptly seek review of the trial court's ruling.

[6]Paris-Sheldon, relying on *Cornell v. Superior Court*, 160 Ariz. 1, 770 P.2d 305 (1989), argues a trial court is required to dismiss charges with prejudice if the state fails to meet the requirements of Rule 16.6(a), Ariz. R. Crim. P., 16A A.R.S. *Cornell*, however, addressed dismissals by the state following egregious violations of Rule 8, Ariz. R. Crim. P., 16A A.R.S. *Cornell*, 160 Ariz. at 2, 770 P.2d at 306. Paris-Sheldon does not assert her Rule 8 speedy trial rights were violated by the dismissal of the charges in CR-20033007. *See Godoy v. Hantman*, 205 Ariz. 104, ¶ 7, 67 P.3d 700, 702 (2003) ("Arizona courts consistently hold that time limits for purposes of the right to a speedy trial begin to run anew when a grand jury reindicts a defendant following the dismissal of an earlier action against the defendant.").

15

Jury Selection

¶25      During jury selection, after the parties had exercised their allocated peremptory challenges pursuant to Rule 18.4(c), Ariz. R. Crim. P., 17 A.R.S., fourteen jurors were impaneled and both parties approved the panel. Before the jury was impaneled, the trial court asked the jurors if any had scheduling conflicts "that suggest you cannot be here all day Wednesday, Thursday, and Friday." After closing arguments, the court, with the agreement of the parties, designated an alternate juror. Paris-Sheldon then stated, "we've impaneled essentially a 12-person jury," and requested the court to "change . . . to a 12-person jury." The parties agreed only an eight-person jury was required. *See* A.R.S. § 21-102(B). The court decided, over Paris-Sheldon's objection, that "it's an eight-person jury by law, and based on a miscalculation by the Court and counsel I'm not inclined to let four more people sit on the case." The court then, again over Paris-Sheldon's objection, excused two jurors because they could not return the following Monday for further deliberations. Three alternates were then selected by lot.

¶26      Paris-Sheldon argues that, by "changing the number of jurors the parties had anticipated hearing the case" and "bifurcat[ing] voir dire" by "ask[ing] hardship questions of the jurors after the parties had exercised their peremptory challenges," the trial court interfered with her right to peremptory challenges.[7] "Although the right to exercise

_____

[7]When objecting at trial, Paris-Sheldon stated she did not "think it[] [was] unlawful to impanel a 12-person jury even if the imposing sentence is less than 30 years" and argued she "might have had a different strategy" in exercising her peremptory challenges had "[the

16

peremptory challenges is not protected by either the federal or the state constitution, such challenges have long been viewed as one means to assure the selection of a qualified and unbiased jury." *State ex rel. Romley v. Superior Court*, 181 Ariz. 271, 274, 889 P.2d 629, 632 (App. 1995). "We regard the right as 'a substantial rather than a mere procedural or technical right [that] should be fully enforced as an aid in securing an impartial jury.'" *Id.*, *quoting State v. Thompson*, 68 Ariz. 386, 390, 206 P.2d 1037, 1039 (1949).

¶27 It was not error, however, for the trial court to reduce the jury to eight members. Section 21-102(B) states that, in cases where the authorized sentence is less than thirty years imprisonment, a jury "*shall* consist of eight persons." (Emphasis added.) A trial with a larger panel is not permitted. Moreover, we cannot ascertain how this necessary reduction interfered with Paris-Sheldon's right to exercise her peremptory challenges. She asserts only that a "different" jury tried her than the one she participated in selecting. A defendant, however, "'is not entitled to be tried by any particular jury, but merely by one which is fair and impartial.'" *State v. Eisenlord*, 137 Ariz. 385, 392, 670 P.2d 1209, 1216 (App. 1983), *quoting Thompson*, 68 Ariz. at 391, 206 P.2d at 1040.

parties] not been heading towards 12 rather than 8." The state asserts Paris-Sheldon's "nebulous general objection was insufficient to preserve th[is] issue on appeal." We disagree. The fact that a defendant qualifies his or her objection does not mean the issue has been waived on appeal. Paris-Sheldon's objections gave the trial court "the opportunity to rule on the issue and correct possible errors," and thus were sufficient to preserve the issue. *State v. Deschamps*, 105 Ariz. 530, 533, 468 P.2d 383, 386 (1970); *see also State v. Vanderlinden*, 111 Ariz. 378, 380, 530 P.2d 1107, 1109 (1975) ("No matter how inartfully the defense counsel may be said to have raised his point, it was clear that he was calling the court's attention to a serious error.").

17

¶28 The Louisiana Supreme Court reached a similar conclusion in *State v. Mosley*, 425 So.2d 764 (La. 1983). There, a twelve-person jury had been impaneled when only six were permitted. *Id*. at 765-66; *see also* La. Code Crim. Proc. Ann. art. 782(A) (2007) ("Cases in which the punishment may be confinement at hard labor *shall* be tried by a jury composed of six jurors.") (emphasis added). After some evidence was presented to the jury, the trial court excused six of the jurors over the defendant's objection. *Id*. The Louisiana Supreme Court concluded there was no error because voir dire had been proper and the defendant had approved the jurors before trial began. *Id*. at 766. The court also rejected "defense counsel's argument that he may have conducted his voir dire differently if the judge and counsel had realized initially that the case was to be tried before a six-person jury," stating, although the argument had "some theoretical substance," the defendant had not exhausted all of his peremptory challenges and, in any event, was not "entitled to any particular juror." *Id*. Similarly, here, Paris-Sheldon passed the jury panel, and nothing in the record suggests voir dire was incomplete or improper.

¶29 Nor was it error for the trial court to excuse two jurors for cause after closing arguments. It is not uncommon for a court to excuse a juror after a trial has begun; a variety of personal or economic hardships might arise during a trial. *Cf.* Ariz. R. Crim. P. 18.4(b) ("A challenge for cause may be made at any time."); Ariz. R. Crim. P. 18.5(h) (deliberating juror may be "excused due to inability or disqualification to perform required duties"). Faced with the need to reduce the jury panel to its statutorily required size, and with the possibility

18

deliberations could continue into the following week, the court chose an appropriate solution. This procedure could not have interfered with Paris-Sheldon's use of her peremptory challenges because the record does not suggest there was any risk apparent to the court during jury selection that deliberations might continue into the following week. Therefore, there is no possibility Paris-Sheldon used a peremptory challenge on a juror who should have been excused for cause at the time the jury was selected.

¶30            Indeed, although the trial court did not dismiss the two jurors "by lot," what occurred here is otherwise indistinguishable from a trial court's designation of alternate jurors. *See* Ariz. R. Crim. P. 18.5(h). Paris-Sheldon neither argues the trial court's method of excusing jurors resulted in a jury panel that was not impartial nor suggests that the panel was biased. *See Eisenlord*, 137 Ariz. at 392, 670 P.2d at 1216. Moreover, the Rules of Criminal Procedure do not mandate any specific number of alternate jurors. *See* Ariz. R. Crim. P. 18.5(b).

¶31            The case Paris-Sheldon primarily relies on, *State v. Tinnes*, 877 A.2d 313 (N.J. Super. Ct. App. Div. 2005), is readily distinguishable. There, the trial court conducted further voir dire immediately after the parties exercised their peremptory challenges and excused several jurors because of scheduling conflicts. *Id.* at 326. The New Jersey appellate court concluded "the integrity of the selection process was violated," *id.* at 330, because it was possible the defendant had used a peremptory challenge on a juror who should have been excused for cause. *Id.* at 326, 326 n.4. Unlike in the case before us, however, there was no

19

apparent reason for the trial court in *Tinnes* to conduct further voir dire after the parties had exercised their challenges, rather than before. Moreover, the mere possibility that a defendant used a peremptory challenge on a juror who should have been excused for cause is not sufficient to show prejudice. *See State v. Hickman*, 205 Ariz. 192, ¶ 28, 68 P.3d 418, 424 (2003) (defendant must show prejudice when trial court erroneously fails to excuse juror for cause and defendant uses peremptory challenge to cure error). For the reasons stated above, we conclude the trial court's reduction of Paris-Sheldon's jury to the number of jurors prescribed by law and the procedure it used to do so were not erroneous.

Motion for Judgment of Acquittal

¶32 Lastly, Paris-Sheldon contends the trial court erroneously denied her motion for a judgment of acquittal on the charge of disorderly conduct as to Hyatt, made pursuant to Rule 20, Ariz. R. Crim. P. "We review the denial of a motion for a judgment of acquittal for an abuse of discretion" and will reverse only if there is "'a complete absence of probative facts to support a conviction.'" *Alvarez*, 210 Ariz. 24, ¶ 10, 107 P.3d at 353, *quoting State v. Mathers*, 165 Ariz. 64, 66, 796 P.2d 866, 868 (1990). "If reasonable minds can differ on the inferences to be drawn from the evidence, a trial court has no discretion to enter a judgment of acquittal and must submit the case to the jury." *Id.*

¶33 The state indicted Paris-Sheldon under A.R.S. § 13-2904(A)(6), which states: "A person commits disorderly conduct if, with intent to disturb the peace or quiet of a neighborhood, family or person, or with knowledge of doing so, such person . . . [r]ecklessly

20

handles, displays or discharges a deadly weapon or dangerous instrument." Paris-Sheldon asserts the evidence was insufficient that she "knew . . . Hyatt would be able to hear the firing of the weapon in the back trailer from his location at the front of the property." *See State v. Burdick*, 211 Ariz. 583, ¶ 8, 125 P.3d 1039, 1041 (2005) ("[W]hen a defendant is charged with disorderly conduct for disturbing the peace of a particular person, the state is required to prove that the defendant knowingly disturbed the victim's peace. . . ."). She reasons there was no evidence "indicat[ing] the distance between [Hyatt's trailer and Love's]," nor that she "had reason to experience hearing a gunshot . . . coming from one trailer when she was in the other trailer."

¶34        Palmer testified Love's trailer was "right behind" Hyatt's "on the same property." This testimony, together with evidence that Paris-Sheldon lived for some time in Love's trailer, supports the inference the trailers were close enough together for Paris-Sheldon to know an occupant of the neighboring trailer would hear the revolver's report when she fired it. The record does not suggest there was any significant distance between the trailers or the presence of any obstruction that might have blocked the sound. And Hyatt testified that, when he heard the gunshot, he initially believed "someone had slammed the . . . door" of Love's trailer. A jury could infer from this evidence that, if the trailers were close enough for an occupant of one to hear a door slammed in the other, Paris-Sheldon would know an occupant of the neighboring trailer could hear a gunshot. Moreover, the evidence established Paris-Sheldon was intimately familiar with firearms, which supports the

21

inference Paris-Sheldon would know the sound her revolver made and would also know that, when she fired it, that sound would be heard in the neighboring trailer. Accordingly, the trial court did not abuse its discretion by denying Paris-Sheldon's motion for a judgment of acquittal. *See Alvarez*, 210 Ariz. 24, ¶ 10, 107 P.3d at 353.

**Disposition**

**¶35**    We affirm Paris-Sheldon's convictions and sentences.

_____
J. WILLIAM BRAMMER, JR., Judge

CONCURRING:


_____
PETER J. ECKERSTROM, Presiding Judge


_____
PHILIP G. ESPINOSA, Judge