NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ANTONIO RAYELL COOPER, JR., *Appellant.*

No. 1 CA-CR 16-0869
No. 1 CA-CR 17-0502
(Consolidated)
FILED 11-29-2018

Appeal from the Superior Court in Maricopa County
No.  CR2016-114883-001
No.  CR2011-142001-001
The Honorable Gregory Como, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jillian Francis
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Rena P. Glitsos
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge James P. Beene delivered the decision of the Court, in which Judge Michael J. Brown and Chief Judge Samuel A. Thumma joined.

**B E E N E, Judge**:

¶1         Antonio Rayell Cooper, Jr., appeals his convictions and sentences for aggravated assault, resisting arrest, threatening or intimidating, and three counts of attempt to commit assault by owner's vicious dog.  Cooper challenges the constitutionality of the statutory provision that elevates threatening or intimidating from a class 1 misdemeanor to a class 6 felony if the offender is a criminal street gang member.  Cooper also argues that the legislature improperly invaded the province of the judiciary by providing for the admission of gang member indicia evidence in prosecutions for participating in or assisting a criminal street gang.  Finally, Cooper contends the superior court erred by denying his requests for new counsel, and the court should have ordered an evaluation of his psychological competency to stand trial.  For the reasons that follow, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

¶2         As twelve-year-old J.O. and his two school-age friends approached an ice cream truck, Cooper, who was on probation for offenses committed in CR2011-142001-001, "let [his] dog go" and commanded the eighty-pound pit bull to "attack, go get them."  The boys fled from the dog and jumped atop a "power box," ensuring their relative safety as the dog barked and lunged at them.  Cooper approached the boys, yelled at them to get down from the box, and continued inciting the dog to attack them.

¶3         Police officer Conn arrived at the scene shortly thereafter, and Cooper approached him with the dog, "provok[ing]" the officer.  Cooper threatened Conn that he was going to take the officer's gun and kill him.  Cooper then "charged" the officer, and the dog, following Cooper's command to "go get him," "jump[ed] up" on Conn as if attempting to bite

---

[1]         We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against the defendant.  *State v. Harm*, 236 Ariz. 402, 404 n.2, ¶ 2 (App. 2015).

him. The dog tore the flap off the ammunition pouch that was attached to Conn's duty belt, and Cooper swung the dog's leash at Conn, hitting him in the head with the metal end. Conn then "[t]ased" Cooper right before other officers arrived and detained Cooper on the ground. As the officers attempted to handcuff Cooper, he tensed his arms to keep them under his body. As a result of his encounter with Cooper and the dog, Officer Conn sustained injuries to his head, hand, and knee.

¶4        The State charged Cooper in CR2016-114883-001 with aggravated assault, resisting arrest, threatening or intimidating, and three counts of attempt to commit assault by owner's vicious dog. In connection with the threatening or intimidating charge, the State also alleged Cooper was a member of a criminal street gang, thereby raising the offense from a class 1 misdemeanor to a class 6 felony. *See* Ariz. Rev. Stat. ("A.R.S.") § 13-1202(B). Detective Hall of the Phoenix Police Department's Gang Enforcement Unit testified regarding various indicia of Cooper's membership in the Hellbound Gangsters, a criminal street gang. *See* A.R.S. § 13-105(9) (indicia of criminal street gang membership).

¶5        The jury found Cooper guilty on all counts. The superior court imposed a combination of concurrent and consecutive prison terms totaling 24 years and revoked Cooper's probation in CR2011-142001-001.[2] Cooper timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I.    A.R.S. § 13-1202(B) Does Not Violate Cooper's Constitutional Rights.

¶6        The threatening or intimidating statute provides, in relevant part:

> A.  A person commits threatening or intimidating if the person threatens or intimidates by word or conduct:
>
> 1. To cause physical injury to another person . . . .
>
> . . .

---

[2]    Cooper raises no issues independently related to the probation revocation.

B.   Threatening or intimidating pursuant to subsection A, paragraph 1 . . . is a class 1 misdemeanor, except that it is a class 6 felony if:

. . .

2.  The person is a criminal street gang member.

A.R.S. § 13-1202.

¶7          Cooper presents multiple arguments contesting the constitutionality of § 13-1202(B)(2) under the federal and state constitutions. Asserting "[m]ere membership in a gang is not a crime[,] "Cooper principally argues § 13-1202(B)(2) facially violates his right to freely associate, and he contends the provision denies him due process because his conduct underlying the threatening and intimidating offense was not gang-related.

¶8          Because Cooper did not raise these arguments at trial, we review for fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005).   "[T]he first step in fundamental error review is determining whether trial error exists." *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). This Court reviews *de novo* the constitutionality of a statute, beginning with a presumption that the law is constitutional.  *State v. Russo*, 219 Ariz. 223, 225, ¶ 4 (App. 2008).  The party challenging the statute bears the burden to persuade us otherwise.  *Id*.

¶9          Cooper misconstrues § 13-1202.   The statute does not criminalize one's association with a gang; rather, it enhances the penalty imposed on a criminal street gang member who commits threatening or intimidating.  *State v. Meeds*, 244 Ariz. 454, 463, ¶ 28 (App. 2018).   As this Court recently determined, § 13-1202(B)(2) does not violate the First Amendment's right of association.   *Id*. at ¶¶ 29-32.   We discern no principled justification to depart from *Meeds*.  Absent compelling authority

to the contrary,[3] we will not construe Arizona's right of association more broadly than the federal counterpart. *See State v. Casey*, 205 Ariz. 359, 354, ¶ 8 (2003) ("Normally we interpret clauses in the Arizona Constitution in conformity with decisions of the United States Supreme Court and its interpretation of similar clauses in the United States Constitution."), superseded by statute on other grounds.

**¶10**　　　　Cooper's due process challenge also fails.　He provides no authority to support the proposition that a conviction under § 13-1202(A)(1), (B)(2) requires evidence of gang-related threatening or intimidating conduct.　Indeed, Cooper admits that "A.R.S. § 13-1202(B) is clear and the Court should interpret it accordingly — that the purpose is to punish gang members with a felony conviction if they threaten or intimidate anyone, regardless of the circumstances."

**¶11**　　　　Moreover, Cooper's apparent substantive due process argument is without merit.　"Substantive due process protects an individual from government interference with rights implicit in the concept of ordered liberty."　*Simpson v. Owens*, 207 Ariz. 261, 267, ¶ 17 (App. 2004) (quotations omitted).　Because Cooper does not contend § 13-1202(B)(2) implicates a fundamental right or that criminal street gang members constitute a suspect class, this Court will find the statute comports with due process if the law has "any conceivable rational basis to further a legitimate governmental interest."　*Ariz. Downs v. Ariz. Horsemen's Found.*, 130 Ariz. 550, 555 (1981). The sentence enhancement provision in § 13-1202 for gang members clearly "serves a compelling state interest . . . : to protect the public from threats and intimidation by members of criminal street gangs, who presumably have a much greater ability than non-gang members to make good on those threats."　*Meeds*, 244 Ariz. at 463, ¶ 32.　Consequently, § 13-1202(B)(2) does not violate substantive due process.

---

[3]　　　　Cooper relies on a number of cases to support his assertion that the Arizona Constitution "may grant broader rights or protections than its federal counterparts in some areas."　Only one of the cited cases, however, mentions the right to assemble.　*See* Ariz. Const. art. II, § 5 ("The right . . . of the people peaceably to assemble for the common good, shall never be abridged.");　*Helge v. Druke*, 136 Ariz. 434, 439 (App. 1983).　But, as Cooper properly conceded, the court in *Helge* did not apply Article 2, Section 5, in rejecting the petitioner's claim that a subpoena *duces tecum* violated his freedom of association.　*Id.*　Thus, *Helge* is not applicable.

**¶12** No error, fundamental or otherwise, occurred. *See Escalante*, 245 Ariz. at 142, ¶ 21.

## II. Cooper Lacks Standing to Challenge A.R.S. § 13-2321(E).

**¶13** For prosecutions of participating in or assisting a criminal street gang, A.R.S. § 13-2321(E) provides: "Use of a common name or common identifying sign or symbol *shall be admissible* and may be considered in proving the existence of a criminal street gang or membership in a criminal street gang." (Emphasis added.) Cooper argues that, by mandating admission of a common name or common identifying sign or symbol in § 13-2321(E), the legislature "strips the court of discretion, and dictates to the Supreme Court that it must allow such evidence," thereby violating the separation of powers doctrine set forth in the Arizona Constitution. *See* Ariz. Const. art. 3 ("The powers of the government of the state of Arizona shall be divided into three separate departments, the legislative, the executive, and the judicial; and, except as provided in this constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others."); Ariz. Const. art. 6, § 5(5) ("The supreme court shall have . . . [p]ower to make rules relative to all procedural matters in any court.").

**¶14** We do not address Cooper's argument because he lacks standing to challenge § 13-2321(E). He was not convicted, let alone charged, in this case with participating in or assisting a criminal street gang. *See State v. Varela*, 120 Ariz. 596, 599 (1978) (noting a defendant lacks standing "to attack a statute on grounds not applicable to himself").

## III. The Court Did Not Abuse Its Discretion by Denying the Motion for New Counsel.

**¶15** Before trial, Cooper repeatedly requested appointment of new counsel. The superior court denied each request but offered to allow Cooper to represent himself. Cooper chose not to appear *pro per*.

**¶16** On appeal, Cooper argues the court erred by denying his requests for new counsel without conducting an evidentiary hearing. We review the superior court's decision to deny a request for new counsel for an abuse of discretion. *State v. Cromwell*, 211 Ariz. 181, 186, ¶ 27 (2005).

**¶17** Although a criminal defendant has the right to be represented by competent counsel, he is entitled neither to counsel of his choice nor to a meaningful relationship with his attorney. *Id.* at ¶ 28. Ordinarily, only the presence of an "irreconcilable conflict or a completely fractured

relationship" between trial counsel and an accused will require the appointment of new counsel. *Id.* at ¶ 29. If a defendant makes sufficient factual allegations that raise a colorable claim of an irreconcilable conflict or of a complete breakdown in communication with counsel, the court must conduct a hearing. *State v. Torres*, 208 Ariz. 340, 343, ¶ 9 (2004). However, not every complaint voiced by a defendant requires a formal hearing or an evidentiary proceeding. *See id.* at ¶ 8. "For example, generalized complaints about differences in strategy may not require a formal hearing or an evidentiary proceeding." *Id.*

**¶18** Here, the court was not required to conduct a formal hearing before denying Cooper's requests for new counsel. In response to Cooper's complaints that appointed counsel had not provided him with the State's discovery nor communicated with him about "details" of his case, his lawyer explained the following to the court:

> I do want to let you know we have had communications. He was originally out of custody. He did fail to appear, a warrant was issued for arrest; so we did lose contact with him. When he was brought into Judge Richter's court, he wasn't happy with the plea and had to be removed from the court. We set up two jail visits . . . and he failed to appear for both of those jail visits.

> We did have a settlement conference where all of his pleas were explained to him by Commissioner French. The fact he was on release on one of them and on probation on the others, that was all explained and it was gone into detail. In fact, the offer does expire today. We did follow-up with his request to run it concurrent; that was denied by the State.

> . . .

> And Your Honor, he honestly will not listen to me. . . . [H]e is upset I will not file motions that I have told him there are no legal bas[e]s to file.

> . . .

> [W]e've sent [discovery] to him. We sent him the first group when he was out. We sent him another group when he was in custody. We've given it to him. I talked to him on the phone about the case . . . and the witnesses that we were interviewing just last week; we went over that.

> I went over his concerns, what he thinks the witnesses would say. Also we have a 40-minute jail visit to go over everything with him.
>
> . . .
>
> We've done significant work on the case. We've done all the interviews. We're ready to go . . . .

¶19        In light of counsel's comments, she and Cooper did communicate about this case. *See State v. Ossana*, 199 Ariz. 459, 461, ¶ 7 (App. 2001) (noting superior court determines credibility of witnesses). Further, her comments reveal that Cooper and his insistence in filing baseless motions caused the conflict between the two. Thus, the conflict was not "irreconcilable." As a result, Cooper failed to make a sufficient showing of a fractured relationship that would require an evidentiary hearing. In any event, the court properly explored the bases of Cooper's stated reasons for his request for substitute counsel, and Cooper does not describe what additional facts would arise had a more formal hearing been conducted. *See State v. Paris-Sheldon*, 214 Ariz. 500, 505, ¶ 11 (App. 2007). No abuse of discretion occurred.

## IV.    The Court Did Not Err By Declining to *Sua Sponte* Order an Evaluation of Cooper's Competency to Stand Trial.

¶20        Finally, Cooper complains that the superior court should have *sua sponte* ordered an evaluation of his competency to stand trial. We disagree. When the court explored with Cooper the possibility of him proceeding *pro per*, the court found: "Obviously you have some college, you're at least of a normal intelligence or probably higher than that. You have no psychiatric or psychological problems." The court's findings apparently were based, at least in part, on Cooper's express assurances that he was educated, "not incompetent[,]" and "not Rule 11." *See* Ariz. R. Crim. P. 11 (describing procedures for determining a defendant's mental competency to stand trial). On this record, although there are indications that Cooper suffered from a bipolar disorder as a juvenile, the court acted well within its discretion in declining to *sua sponte* order an evaluation of Cooper's mental capacity for purposes of this trial. *See* Ariz. R. Crim. P. 11.2 (stating "the court *may*, on motion or on its own, order a defendant's examination") (emphasis added). No error, fundamental or otherwise, occurred.

## CONCLUSION

¶21        Cooper's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:   AA