IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DANIEL JAY EARL, *Petitioner,*

*v.*

THE HONORABLE JEANNE GARCIA,
Judge of the SUPERIOR COURT OF
THE STATE OF ARIZONA, in and for
the County of MARICOPA, *Respondent Judge,*

STATE OF ARIZONA, *Real Party in Interest.*

No. 1 CA-SA 13-0096
FILED 5-15-2014

Petition for Special Action from the Superior Court in Maricopa County
No.  CR2011-118323-001, CR2012-007897-001
The Honorable Jeanne Garcia, Judge

**JURISDICTION DECLINED**

COUNSEL

David Goldberg Attorney at Law, Fort Collins, CO
By David Goldberg
*Counsel for Petitioner*

Maricopa County Attorney's Office, Phoenix
By Karen Kemper
*Counsel for Real Party in Interest*

_____

**OPINION**

Judge Diane M. Johnsen delivered the opinion of the Court, in which Judge Randall M. Howe specially concurred. Judge Peter B. Swann dissented.

_____

**J O H N S E N**, Judge:

**¶1**        Rule 8 of the Arizona Rules of Criminal Procedure requires a defendant to be tried within a specified time period, and Rule 16.6(a) precludes the prosecution from voluntarily dismissing a charge to avoid the Rule 8 deadline. Daniel Jay Earl argues the State violated these rules by dismissing a theft charge against him on the eve of the deadline because it was unprepared to go to trial and re-filing the same charge to start the Rule 8 clock running anew. We decline jurisdiction of Earl's petition for special action.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**        Earl was charged by information in June 2011 with theft of a new car worth more than $25,000, in violation of Arizona Revised Statutes ("A.R.S.") section 13-1802 (2014).[1] The information charged that Earl, "without lawful authority, knowingly obtained [the car], by means of a material misrepresentation . . . with the intent to deprive" a Phoenix car dealership of the vehicle. The prosecution's theory was that Earl falsely identified his employer on a financing application he submitted to the dealership when he was negotiating to buy the car and then refused to return the car after the discrepancy was discovered and the deal fell through.

**¶3**        Trial was set for August 8, 2012. At a settlement conference on July 16, the State learned facts undercutting its theory of the case. After the settlement conference failed, the superior court held a final trial management conference on July 31, at which the prosecutor said there were no pretrial matters to address and that he "want[ed] to affirm" the

_____

[1]        Absent material revision after the date of an alleged offense, we cite a statute's current version.

August 8 trial date. The minute entry entered after the conference observed that the "last day," for purposes of Rule 8, remained August 23.

¶4 On August 1, another prosecutor met with the grand jury and asked it to hand down an indictment again charging Earl with theft in connection with the car. A detective testified that after the dealership and Earl could not come to terms on what to do after the financing fell through, the dealership tried unsuccessfully to repossess the car and finally reported it stolen. The grand jury issued an indictment again charging Earl with theft in violation of A.R.S. § 13-1802, alleging that "between the 9th day of September, 2009 and the 23rd day of May, 2012, without lawful authority, [Earl] knowingly controlled [the car] with the intent to deprive" the dealership of it.

¶5 Earl and his counsel were unaware of the indictment when they appeared before the master calendar assignment judge the morning of August 8 to be sent out for trial on the 2011 charge. After a three-minute unrecorded sidebar conversation at which the prosecutor disclosed the indictment, the court asked the prosecutor whether he was moving to dismiss the 2011 information without prejudice, and the prosecutor said, "That's correct." After Earl's counsel said he had no objection to the dismissal, the court immediately stated that Earl could reserve an objection: "It's ordered dismissing the 2011 case while the presumption is without prejudice, but without prejudice to have it raised."

¶6 Several months later, Earl moved in the 2012 matter to dismiss both charges with prejudice. He argued the State could not show good cause pursuant to Rule 16.6(a) for dismissing the 2011 charge and the prosecutor could not have avowed that the motion to dismiss was not made to avoid Rule 8. Earl argued that because the State dismissed and re-filed the theft charge against him "in bad faith and in order to secure a tactical advantage," the dismissal of the 2011 charge should have been with prejudice.

¶7 At oral argument on the motion to dismiss, the prosecutor conceded the State decided to dismiss and re-file the 2011 theft charge because of facts it learned during the settlement conference three weeks before trial was to begin. Although the State's original theory had been that Earl obtained the car by making a material misrepresentation on the financing application (in violation of A.R.S. § 13-1802(A)(3)), its new theory was that he controlled the property of another with the intent to deprive (in violation of § 13-1802(A)(1)). The prosecutor asserted that "we took the case back to the Grand Jury in order to obtain an indictment on

3

new facts and circumstances and under a different subsection of the statute. That was the purpose of taking the case back to Grand Jury. It wasn't for the purpose of delay." The superior court denied the motion to dismiss, but, at Earl's request, stayed the trial pending the results of this special action.

## DISCUSSION

¶8 After failing to move to continue trial on the 2011 charge, the State did not file a written motion to dismiss the charge. Nor did it offer on the record any "good cause" to support its oral motion, as Rule 16.6(a) requires. In fact, the State said nothing on the record about the purpose of the dismissal. And after the court volunteered that the dismissal would be without prejudice to Earl's opportunity to argue about it later, Earl did not object. Nor did he press the prosecutor to present the motion to dismiss on the record in a fashion that might have compelled the court to decide whether "the purpose of the dismissal [was] not to avoid the provisions of Rule 8." *See* Ariz. R. Crim. P. 16.6(a).

¶9 Under the circumstances, Earl's failure to object to the State's oral motion to dismiss would not have prevented him from moving for reconsideration or filing a timely petition for special action. But he could not wait to raise the issue in a subsequent prosecution; he needed to seek review *in the 2011 case*. *State v. Paris-Sheldon*, 214 Ariz. 500, 508, ¶ 23, 154 P.3d 1046, 1054 (App. 2007); *see State v. Alvarez*, 210 Ariz. 24, 30, 107 P.3d 350, 356 (App. 2005), *vacated in part on other grounds*, 213 Ariz. 467, 143 P.3d 668; *Duron v. Fleischman*, 156 Ariz. 189, 191, 751 P.2d 39, 41 (App. 1988).

¶10 In *Paris-Sheldon*, this court held a defendant in Earl's position could not appeal in the second case from the dismissal of charges in the first case without prejudice. 214 Ariz. at 508, ¶ 23, 154 P.3d at 1054. There is a practical reason why this is so. If, as Earl argues, the State moved to dismiss the 2011 charge for the purpose of avoiding the Rule 8 deadline, Rule 16.6(a) required the court to deny the motion. *Id.* ("[I]f the court concludes the state is attempting to avoid Rule 8, the court must deny the motion to dismiss altogether."). If Earl had objected to the motion to dismiss or had moved to reconsider the dismissal without prejudice or raised the issue in a timely petition for special action in the 2011 matter, his Rule 8 rights would have been vindicated, and the prosecution would have been required to bear the consequences of what Earl asserts was its lack of diligence.

¶11 But, having waited to complain until the second prosecution was underway, Earl then sought a different, more extreme remedy -- dismissal of both charges with prejudice. We cannot know what would have happened if Earl had objected to the motion to dismiss or moved for reconsideration of the dismissal of the 2011 information or sought special-action review of that ruling. If he had pressed his Rule 16.6(a) rights at that time, however, we must assume that before the superior court would have dismissed the 2011 charge with prejudice, it would have allowed the State the option of proceeding to trial before the last day on the original charge, as Rule 16.6(a) contemplates. With that possibility long since passed, this court cannot properly consider Earl's argument that the superior court in the second case abused its discretion by failing to dismiss both charges with prejudice.

## CONCLUSION

¶12 The court declines to accept jurisdiction of Earl's petition for special action.

**H O W E**, Judge, specially concurring:

¶13 I concur in the court's decision to decline jurisdiction and its reliance on *State v. Paris-Sheldon*, 214 Ariz. 500, 154 P.3d 1046 (App. 2007). By waiting nearly five months to complain about the dismissal of the information, and then making his complaint in proceedings under the subsequent indictment, Earl has waived his claim that the dismissal should have been with prejudice. Although the dissent maintains that our decision puts the trial court's dismissal "beyond any opportunity for review," the fault lies not with our decision, but with Earl's failure to diligently seek review.

¶14 Our decision to decline jurisdiction obviates the need to address the underlying merits of the petition, whether the trial court abused its discretion in finding that the dismissal of Earl's original information did not violate Arizona Rules of Criminal Procedure 8 and 16.6(a). Although the dissent disagrees with the decision to decline jurisdiction, the dissent also analyzes the merits of the alleged rule violations. I write separately to respectfully express concern about two points in that analysis.

¶15 First, the dissent finds that "[t]he purpose of the dismissal and refiling is clear: The state was unprepared to proceed to trial on the scheduled date, and its chosen procedure enabled it to grant the

functional equivalent of a continuance without demonstrating good cause to the court." (Dissent at ¶ 32). But this is contrary to the trial court's finding that "the State did not act inappropriately in any way."

¶16 This court reviews the denial of a motion to dismiss charges for an abuse of discretion. *State v. Espinoza*, 229 Ariz. 421, 424 ¶ 15, 276 P.3d 55, 58 (App. 2012). An abuse of discretion is "an exercise of discretion which is manifestly unreasonable, exercised on untenable grounds or for untenable reasons." *State v. Wassenaar*, 215 Ariz. 565, 570 ¶ 11, 161 P.3d 608, 613 (App. 2007) (quoting *State v. Woody*, 173 Ariz. 561, 563, 845 P.2d 487, 489 (App. 1992)). Our role is neither to second-guess the trial court nor to substitute our judgment for the trial court's. *State v. Chapple*, 135 Ariz. 281, 297 n.18, 660 P.2d 1208, 1224 n.18 (1983), *superseded by statute*, A.R.S. § 13-756, *as recognized in State v. Benson*, 232 Ariz. 452, 467 ¶ 66, 307 P.3d 19, 34 (2013). We defer because a trial court "has a more immediate grasp of all the facts of the case, an opportunity to see the parties, lawyers and witnesses, and . . . can better assess the impact of what occurs" in court. *Id.*

¶17 Applying these principles, the trial court was better positioned than this court to determine whether the State had good cause to dismiss or moved to dismiss solely to avoid the Rule 8 time limits. Not only did the trial court have briefing and oral argument, but it was also able to assess the prosecutor's demeanor and credibility as he explained the reason for the dismissal. Unless we can fairly say that the trial court's finding is "manifestly unreasonable" or based on "untenable grounds or untenable reasons," we as an appellate court must defer to the trial court.

¶18 The dissent identifies nothing in the record showing that the trial court's finding was manifestly unreasonable or untenable. At the hearing on Earl's motion to dismiss, the State explained that it had sought the dismissal of the information and then obtained a new indictment because circumstances had changed since the filing of the information. The State had learned at the settlement conference that the evidence might not support a charge that Earl had obtained the car by making a material misrepresentation on the loan documents. Still believing that Earl had committed theft by not returning the car, however, the State recharged Earl under a more appropriate subsection of the theft statute, which required proof that Earl controlled the property of another with the intent to deprive the owner of the property without regard to any misrepresentation. In response to Earl's argument that the State did not need to dismiss the information to pursue a new theory of the crime of theft because theft is a "unified offense," the State argued that it could not

obtain an indictment under one theory and then present a different theory to the trial jury. The State concluded that "we took the case back to the Grand Jury in order to obtain an indictment on new facts and circumstances and under a different subsection of the statute. That was the purpose of taking the case back to Grand Jury. It wasn't for the purpose of delay."[2]

¶19        Under these circumstances, I would hesitate to find -- as the dissent implicitly does -- that the trial court's finding that "the State did not act inappropriately in any way" is unreasonable or untenable. The record does not support the dissent's belief that the State was unprepared to try its case under Rule 8's time limits.

¶20        The second difficulty with the dissent's analysis is its statement that if the State discovers that "it is unprepared *for whatever reason* to begin trial before the last day," its only recourse is to request pursuant to Arizona Rules of Criminal Procedure 8.4 and 8.5 that the trial be continued and the time excluded from the time computation. (Dissent at ¶ 34; emphasis added). But this is not correct. Although the State is free to use that procedure if it chooses, it may also move to dismiss the indictment or information pursuant to Rule 16.6(a) if it has "good cause therefor" and if "the dismissal is not to avoid the provisions of Rule 8." *See State v. Johnson*, 113 Ariz. 506, 508, 557 P.2d 1063, 1065 (1976) ("Absent a showing of bad faith on the part of the prosecution or prejudice to the defendant, the State may move to dismiss a prosecution, and the court may grant the motion, at any time."). Once the case is dismissed, the Rule

---

2        The dissent maintains that the State could not use its change in theory as a reason to dismiss because "a theft charge need not specify the particular subsection of the theft statute the defendant is accused of violating." (Dissent at ¶ 31). Although that may be an accurate statement of law about indicting a defendant for theft, the State may nevertheless have reasons to afford a defendant greater notice than might be required. It may simply want to ensure that the defendant is correctly apprised of the theory of liability, if not for justice's sake, at least for the sake of avoiding an issue on appeal. The trial court recognized the State's concern, noting that "[s]urely the Defendant would cry foul if the State did not amend the charging document to reflect the results of its investigation from the first case and give notice of the theory it was proceeding under." But even if the State was not required to seek a new charging document to change its theory of the offense, the issue is whether the State had a reason to dismiss other than to avoid the Rule 8 time limits. The record so shows.

8 time limits begin anew. *State v. Mendoza*, 170 Ariz. 184, 187, 823 P.2d 51, 54 (1992).

¶21　　　　In this case, the State sought dismissal of the information so that it could present the case to the grand jury under the correct theory of the offense. A trial court could reasonably find that this was "good cause" and "not to avoid the provisions of Rule 8." *See Johnson*, 113 Ariz. at 508, 557 P.2d at 1065 (holding that if the State's criminal complaint against defendant had a jurisdictional defect, "the prosecution had the right to attempt to correct the defect and a motion to dismiss is one method of doing this"). The law does not support the statement that the State is limited to seeking a continuance and asking that time be excluded from the Rule 8 time computation.

¶22　　　　Although I disagree with the dissent on these points, I leave their resolution for a case in which the defendant has properly preserved his claim for review. I agree with the decision to decline jurisdiction.

S W A N N, Judge, dissenting:

¶23　　　　I respectfully dissent. This case raises a legal question of statewide importance: Whether the state may dismiss and refile criminal charges as a means of avoiding the deadlines imposed by Ariz. R. Crim. P. 8. The special action, though filed against the respondent judge in the 2012 case, adequately raises the issue of the harm done by the Rule 8 violation in the 2011 case, because that harm manifests itself in the 2012 case.

## JURISDICTION

¶24　　　　In *State v. Paris-Sheldon*, 214 Ariz. 500, 154 P.3d 1046 (App. 2007), the court considered a similar fact pattern with a very different procedural history. There, after initial charges were dismissed and refiled, the defendant moved to dismiss the second prosecution based on a purported Rule 8 violation in the first case. *Id.* at 504, ¶¶ 5-6, 154 P.3d at 1050. The superior court denied the motion, and the defendant was convicted in the second prosecution. *Id.* at ¶¶ 6-7. The court of appeals held that an *appeal* from a conviction in a subsequent prosecution could not raise the issue of the denial of a motion to dismiss based on an alleged speedy trial violation in the initial prosecution. *Id.* at 508, ¶ 24, 154 P.3d at 1054. The court was not presented with the question of special action jurisdiction. In reaching its holding, the court treated the use of an appeal as analogous to invited error -- the defendant allowed the case to proceed to judgment before raising the issue of the earlier Rule 8 violation. *Id.* The

court concluded that the appropriate course of action would have been a motion for reconsideration or special action filed in the first case. *Id.* This case is different.

¶25 There are important differences between special actions and appeals that render the holding of *Paris-Sheldon* inapplicable here. First, the acceptance of special action jurisdiction is purely discretionary, and no authority prohibits the court of appeals from accepting jurisdiction in any special action. For this reason alone, the majority's reliance on *Paris-Sheldon* is misplaced. Our case law is replete with guidelines by which we exercise our discretion to accept jurisdiction, and the factors warranting jurisdiction are present here. Second, unlike an appeal, a special action is not filed "in" a case -- it is an *original* action challenging the official conduct of a public official. A special action should be filed when the harm it seeks to redress becomes manifest, and the superior court case number should be of no consequence. Third, unlike appeals, special action jurisdiction is not subject to rigid time constraints.

¶26 Here, Earl filed his motion to dismiss the second prosecution, and pursued this special action when the court denied it. By challenging the denial of his motion to dismiss via special action, Earl appropriately waited for the question to become ripe and promptly sought review when it did. It is true that Earl could have named the trial judge in the 2011 case as a respondent. But in that case, the trial judge expressly ruled "without prejudice" to Earl's right to raise the issue in the 2012 case. Had Earl brought a special action at that point, it is extremely unlikely that we would have accepted jurisdiction, because he still had a right (granted by the court itself) to pursue the issue further in the superior court in the second prosecution. Of course, Earl could not have appealed the decision in the 2011 case, because he had not been convicted. He therefore pursued the only course of action available to him: He filed the motion that he had been invited to file, and then sought special action review to ensure that *Paris-Sheldon* did not bar review on appeal. By declining jurisdiction over this special action, the majority has placed the court's ruling (and the state's conduct) beyond any opportunity for review.

¶27 The majority faults Earl for failing to seek reconsideration of the dismissal without prejudice, but cites no authority for the proposition that a motion for reconsideration is ever a necessary predicate for review. The fact that we do not know what would have happened had Earl sought reconsideration in the 2011 case is, in my view, a frail justification for

declining jurisdiction.  Most appellate review is conducted without the benefit of such knowledge.

**¶28**　　　　As the majority notes, the state did not file a written motion to dismiss, and it did not offer good cause for the dismissal.  It is true that if the court had detected lack of merit in the oral motion and denied it, the resulting trial would have vindicated Earl's Rule 8 rights.  But the court granted the motion, and proceedings on reconsideration would have taken the case beyond the last day under Rule 8, effectively giving the state a continuance during which it could have prepared for trial.  It seems odd to fault Earl for not pursuing a motion that would have had the practical effect of denying him the very rights he seeks to vindicate.  *Cf. Jimenez v. Chavez*, 685 Ariz. Adv. Rep. 45 (App. Apr. 22, 2014).

**¶29**　　　　The majority disapproves of the fact that Earl seeks a more "extreme" remedy than that to which he would have been entitled had the court denied the state's motion to dismiss -- instead of proceeding to trial on the first charge, he seeks dismissal of the second.  But the trial court itself contemplated Earl's right to seek such a remedy when it ruled without prejudice to seek relief on "double jeopardy" grounds.  (Even if double jeopardy relief was legally unavailable in this context, the court clearly expressed its view that dismissal with prejudice was a possible remedy.)  Even if the majority would not grant Earl the relief he seeks, there appears to me no justification for declining jurisdiction.

**¶30**　　　　More troubling is that the majority has not spelled out a path to appellate review for defendants who find themselves in this situation.  An appeal of a dismissal without prejudice is legally impossible, as is an appeal filed in the subsequent case.  *See Paris-Sheldon*, 214 Ariz. 500, 154 P.3d 1046.  A motion for reconsideration would deprive the defendant of the very right he seeks to vindicate when the state seeks dismissal close to the last day under Rule 8.  A special action naming the first trial judge as respondent would not meet with favor, because the defendant would not yet have exhausted the rights the trial court preserved for him in the second prosecution.  I cannot divine from the majority opinion or the special concurrence any practical means of redress for this clear end-run around Rule 8.

### THE MERITS

**¶31**　　　　Earl argues that with a "last day" of August 23 approaching, the state dismissed the charge because after hearing his account at the settlement conference, it realized that it was unprepared to go to trial on

August 8 on theft-by-misrepresentation. He correctly points out that a theft charge need not specify the particular subsection of the theft statute the defendant is accused of violating. *See State v. Brown*, 204 Ariz. 405, 408-09, ¶ 13, 64 P.3d 847, 850-51 (App. 2003) ("§ 13-1802 creates a single crime of theft, combining or merging the common law crimes of larceny, fraud, embezzlement, obtaining money by false pretenses, and other similar offenses." (citation omitted) (internal quotation marks omitted)). And due process does not require the state to specify the manner in which the alleged theft occurred. *See State v. Winter*, 146 Ariz. 461, 465, 706 P.2d 1228, 1232 (App. 1985) ("[A] general citation of the theft statute in the indictment suffices to charge a violation of its subparts."), *abrogated on other grounds by State v. Kamai*, 184 Ariz. 620, 911 P.2d 626 (App. 1995).

**¶32** In response to Earl's petition for special action, the state does not argue that the new theory of the case *required* it to dismiss and refile the charge. Indeed, it offers no rebuttal to Earl's argument that it was not required even to amend the charge to spell out its changed theory. The purpose of the dismissal and refiling is clear: The state was unprepared to proceed to trial on the scheduled date, and its chosen procedure enabled it to obtain the functional equivalent of a continuance without demonstrating good cause to the court.

**¶33** Rule 8 requires the prosecution to be prepared to proceed to trial before the last day. The prosecution must diligently determine the facts and the applicable law so that if a mistake in the charging document needs to be corrected, the state can move for leave to amend the charge within the time limits imposed by Rules 13.5(b) and 16. And when the state affirms its readiness for trial, it should be held to its avowal. *Jimenez*, 685 Ariz. Adv. Rep. 45, at *5, ¶ 20.

**¶34** Under Rule 16.6(a), the state may move to dismiss without prejudice only if the court finds that the purpose of the dismissal is not to avoid Rule 8 time limits. If the prosecution discovers that it is unprepared for whatever reason to begin trial before the last day, it may move pursuant to Rules 8.5 and 8.4(e) to continue the trial and have the delay excluded from the Rule 8 time limit. Such a motion "must be in writing and state with specificity the reason(s) justifying the continuance." Ariz. R. Crim. P. 8.5(a). The superior court may grant a motion to continue "only upon a showing that extraordinary circumstances exist and that delay is indispensable to the interests of justice." Ariz. R. Crim. P. 8.5(b).

**¶35** Here, the state chose not to move for a continuance to allow time to develop a new theory of the case -- such a continuance would have

thwarted the purpose of Rule 8, and likely would not have been granted. Instead, it dismissed the charges after it had already filed a "new" charge under the identical statute, thereby granting itself a substantial extension of time and evading Rule 8 entirely.

¶36 The practical effect of the state's conduct in this case was to secure the exact result that Rule 8 is designed to avoid. If the rule is to have meaning, then courts cannot sit silent as the state maneuvers around it. By allowing the state to employ this procedure, the court not only renders the rule ineffective, it actually rewards the state for failing to prepare to begin trial before the last day.

¶37 My conclusion that the court erred in denying Earl's motion to dismiss does not end the inquiry. Rule 16.6(d) provides that "[d]ismissal of a prosecution shall be without prejudice to commencement of another prosecution, unless the court order finds that the interests of justice require that the dismissal be with prejudice." The cases make clear that although several factors may be relevant, a defendant who demonstrates a violation of Rule 8 is not entitled to dismissal with prejudice absent proof that he incurred prejudice from the violation. *See State v. Mendoza*, 170 Ariz. 184, 191-92, 823 P.2d 51, 58-59 (1992); *State v. Gilbert*, 172 Ariz. 402, 404, 837 P.2d 1137, 1139 (App. 1991) ("The most important factor to consider in whether a dismissal should be with or without prejudice is whether delay in the prosecution will result in prejudice to the defendant.").

¶38 Earl argues he was prejudiced because by refiling the charge against him, the state was able to escape the results of "its own lack of diligent preparation and marshal additional evidence to support another theory of theft." Although that is true, Earl cites no authority *requiring* dismissal with prejudice simply because a Rule 8 violation allows the state to overcome what would have been a tactical disadvantage at trial. In *State v. Vasko*, 193 Ariz. 142, 147, ¶ 22, 971 P.2d 189, 194 (App. 1998), we stated, "[t]he specific test for prejudice when a speedy trial violation occurs is whether defendant has shown that his defense has been harmed by the delay; it is not sufficient for a defendant to contend that the state may not have made its case had the trial proceeded without the continuance." Earl also argues that he experienced continuing expense and anxiety by the delay, and his liberty and freedom were constrained by the conditions of his pretrial release.

¶39 I would therefore grant relief and remand the case to the superior court to enable it to evaluate Earl's claim of prejudice. To

demonstrate sufficient prejudice, Earl would not need to establish that he would have been acquitted if he were tried on the original charge on August 8. But he would be required to demonstrate that his defense was harmed in a material way by the violation of Rule 8, and in considering that question, the court could take into account the totality of such harm -- including the burden imposed on him by facing criminal charges for a period of time in excess of that which the rule contemplates. The command of Rule 8 is not empty, and when a defendant is demonstrably harmed by its violation, the superior court should dismiss with prejudice.

¶40 For these reasons, I respectfully dissent. I would accept jurisdiction and grant the limited relief detailed above.



Ruth A. Willingham · Clerk of the Court
FILED: MJT